UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE KUROWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 4363 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JOHN KRAFT, KIRK ALLEN, ALYSSIA BENFORD, | ) | |
| CYNTHIA BRZANA, SHERRI GRIMMINGS, | ) | |
| KRISTINIA WING, BECKY BECKER, EDGAR | ) | |
| COUNTY WATCHDOGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this highly acrimonious case, Bonnie Kurowski sued Defendants, alleging false light invasion of privacy and cyberstalking. Doc. 5. Defendants moved for summary judgment, Doc. 47, and Kurowski ultimately moved to dismiss the suit with prejudice under Civil Rule 41(a)(2), Doc. 75. The court granted Kurowski's motion to dismiss but noted that the dismissal did not moot the summary judgment motion's request for attorney fees and costs under the Illinois Citizen Participation Act ("CPA"), 735 ILCS 110/1 *et seq.*, or Defendants' separate motion for sanctions. Docs. 78-79. The court denies the relief sought by Defendants.

**I.      Request for Fees and Costs under the CPA**

The CPA targets strategic lawsuits against public participation ("SLAPPs")—meaning "meritless" suits in which plaintiffs "do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction." *Sandholm v. Kuecker*, 962 N.E.2d 418, 427 (Ill. 2012). The CPA provides that a "court shall award a moving party who prevails in a motion under this Act reasonable attorney's fees and costs incurred in connection with the motion." 735 ILCS 110/25. To prevail under the CPA, the

"moving party [must] demonstrate that the plaintiff's complaint is 'based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.'" *Sandholm*, 962 N.E.2d at 434 (quoting 735 ILCS 110/15). "If the moving party has met his or her burden of proof, the burden then shifts to the responding party to produce 'clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability' under the Act." *Ibid*. (quoting 735 ILCS 110/20(c)).

The Supreme Court of Illinois has "construe[d] the phrase 'based on, relates to, or is in response to' in [the CPA] to mean *solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.'" *Id*. at 430 (quoting 735 ILCS 110/15). "[W]here a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendants'[] rights of petition, speech, association, or participation in government." *Ibid*. "If a plaintiff's complaint genuinely seeks redress for damages from defamation or other intentional torts and, thus, does not constitute a SLAPP, it is irrelevant whether the defendants' actions were genuinely aimed at procuring favorable government action, result, or outcome." *Id*. at 433 (internal quotation marks omitted).

Defendants do not meet their burden of showing that this suit was "*solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.'" *Id*. at 430 (quoting 735 ILCS 110/15); *see also id*. at 434 ("[D]efendants had the initial burden of proving that plaintiff's lawsuit was solely based on, related to, or in response to their acts in

2

furtherance of their rights of petition, speech or association, or to participate in government. Only if defendants have met their burden does the plaintiff have to provide clear and convincing evidence that defendants' acts are not immunized from liability under the Act.") (cleaned up). In fact, Defendants did not even cite the proper standard in their initial brief. Doc. 49 at 7-9. And although Kurowski cited and discussed that standard in her opposition brief, Doc. 82 at 4-5, 10-13, Defendants did not engage with it in their reply, Doc. 91 at 4-10. By failing to argue, let alone show, that Kurowski's suit was "*solely* based on, relating to, or in response to any act or acts of [Defendants] in furtherance of [their] rights of petition, speech, association, or to otherwise participate in government," *Sandholm*, 962 N.E.2d at 430 (internal quotation marks omitted), Defendants forfeited their opportunity to recover fees and costs under the CPA. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[The plaintiff] did not make that argument, either here or in the district court. His failure to do so forfeits the argument."); *Prymer v. Ogden*, 29 F.3d 1208, 1214 (7th Cir. 1994) ("[The plaintiff] has made no effort to show this court how his case falls within th[e relevant] narrow exception. … This court will not expend its own resources to make [the plaintiff's] arguments for him.").

**II.     Motion for Sanctions**

Defendants also seek sanctions against Kurowski and her counsel (former and present) under Civil Rule 11, 28 U.S.C. § 1927, and the court's inherent power. Doc. 70.

Rule 11 provides in relevant part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

3

>(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). A Rule 11 motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Section 1927 is a proper vehicle for sanctioning only lawyers, not their clients. *See United States v. Rogers Cartage Co.*, 794 F.3d 854, 862 (7th Cir. 2015) ("[Section] 1927 cannot be used to impose sanctions against a party.").

Finally, "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (internal quotation marks omitted). "[T]he inherent power of the court is a residual authority, to be

4

exercised sparingly and only when other rules do not provide sufficient basis for sanctions." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (internal quotation marks omitted). "Sanctions imposed pursuant to the district court's inherent power are appropriate where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012). By contrast, sanctions "in the interest of 'fairness'" are "precisely the sort of sanction that is outside the court's inherent power." *Id*. at 662.

### A. Inherent Authority Sanctions

Defendants develop no argument as to why the court must resort to its inherent power to impose sanctions in this case. The argument is therefore forfeited. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted).

### B. Rule 11 Sanctions

Defendants advance various grounds for Rule 11 sanctions. The court considers the grounds articulated in Defendants' motion, which they sent to Kurowski's counsel along with a safe harbor letter. Doc. 70 at ¶ 27; *see id*. at 16 (safe harbor letter addressed to Kurowski's current and former counsel). Consistent with Rule 11(c)(2), the court will not consider grounds for Rule 11 sanctions pressed in Defendants' brief but not included in the motion they attached to their safe harbor letter. *See Mallory v. Rush Univ. Med. Ctr.*, 2021 WL 458547, at *22 (N.D. Ill. Feb. 9, 2021) ("[T]he Court declines to consider Rush's invocation of Rule 11(b)(1) … because Rush did not raise this ground in its November 18 'safe harbor' letter. … [A] safe-harbor letter only authorizes a party to seek sanctions based on the grounds set forth in the letter.") (internal quotation marks omitted), *appeal dismissed*, 2021 WL 7541199 (7th Cir. Nov. 16, 2021); *Knapp v. Evgeros, Inc.*, 2017 WL 3668165, at *2 (N.D. Ill. Aug. 24, 2017) ("Evgeros can seek Rule 11

5

sanctions only on the grounds set forth in the [safe harbor] letter. After all, Rule 11(c)(2) says that the movant must serve a Rule 11 motion 21 days before filing it, which means that the filed motion must be materially identical to the served motion. The same necessarily holds for a letter served in lieu of a motion, meaning that the court may not consider any grounds set forth in the motion that were not articulated in the letter.").

The grounds for which Defendants provided proper notice, rest on the following:

- Kurowski's allegation that "the Defendants falsely stated in the article [attached to the amended complaint as Exhibit 1] that Plaintiff had filed bankruptcy twice." Doc. 5 at ¶ 15; *see* Doc. 70 at ¶¶ 5-9.

- Kurowski's "affixing to the Amended Complaint a document wherein she claimed that she had a Ph.D." Doc. 70 at ¶ 10; *see* Doc. 5-1 at 15.

- Kurowski's allegation that "[m]any of the statements made in [the article attached to the amended complaint as Exhibit 1] about Plaintiff were untrue, including the statements regarding the amount of student loans she allegedly owed." Doc. 5 at ¶ 15; *see* Doc. 70 at ¶ 11.

- Kurowski's allegation that the article attached to the amended complaint as Exhibit 2 "falsely accused Plaintiff of having 'sent a threatening email to Township Trustees and the Township Supervisor making all kinds of wild incoherent accusations, threatening criminal and civil actions and even threatening to file a complaint with the DuPage County State'[s] attorney and the National Security Division of the Department of Justice.'" Doc. 5 at ¶ 17; *see* Doc. 70 at ¶ 12.

- Kurowski's allegation that she sent a letter to State's Attorney Jim Glasgow. Doc. 5 at ¶ 22; *see* Doc. 70 at ¶ 13.

- Kurowski's allegation that, "[u]pon learning that Plaintiff had written this letter to [Glasgow], Defendants commenced a campaign to harass Plaintiff." Doc. 5 at ¶ 24; *see* Doc. 70 at ¶ 14.

- Kurowski's allegation that she lost her employment as a result of Defendants' actions. Doc. 5 at ¶¶ 16, 34, 39; *see* Doc. 70 at ¶ 15.

- Kurowski's and/or her counsel's failure to amend the amended complaint "even after Defendants produced letters concerning the fact that Plaintiff objectively lied about" various matters. Doc. 70 at ¶ 22; *see also id*. at ¶ 8 ("Even after replacement counsel arrived at the scene, no amendment was filed correcting all of the false contentions in the Amended Complaint.").

To the extent Defendants seek sanctions based on Kurowski's cyberstalking claim—which relies on an Illinois criminal statute, Doc. 5 at ¶¶ 36-40—the motion attached to the safe harbor letter failed to provide sufficient notice. The motion says only: "As a preliminary matter, Plaintiff['s] Amended Complaint contains two counts arising out of a claim for false light invasion of privacy and the Illinois criminal statute for cyberstalking even though Plaintiff is not the State's Attorney who could advance a criminal charge." Doc. 70 at ¶ 4. And beyond mentioning the cyberstalking count in passing, Defendants' initial sanctions brief says nothing about Kurowski's invocation of Illinois criminal law. Doc. 72 at 2 ("Plaintiff's [amended complaint] contains two counts, False Light Invasion of Privacy and Cyberstalking."). Not until their reply brief did Defendants develop an argument that there was "no legitimate basis for the allegations or a good faith basis for extension or modification of the Illinois criminal law to be extended to Plaintiff's claims." Doc. 86 at 6. This comes too late given Rule 11(c)(2)'s notice requirement and traditional principles of forfeiture. *See Judge*, 612 F.3d at 557 ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted); *Nelson v. La Crosse Cnty. Dist. Atty.*, 301 F.3d 820, 836 (7th Cir. 2002) ("It is well settled that issues raised for the first time in a reply brief are deemed waived.").

As for the grounds properly presented in the motion attached to the safe harbor letter, several are meritless. Defendants argue, for example, that Kurowski and her counsel should be sanctioned for her allegation that she sent Glasgow a letter; the reason, they say, is that Glasgow averred that he could not remember receiving the letter. Doc. 70 at ¶ 13; *see* Doc. 48-28 at ¶ 2 (affidavit of Glasgow stating, "I have no memory or knowledge of receiving or reviewing a letter which is Exhibit 4 attached to Plaintiff's Complaint"). To state the obvious, whether a person—

particularly a public official who undoubtedly receives a great deal of correspondence—remembers receiving a particular letter is a question different from whether the letter was sent. Proceeding from their faulty premise, Defendants further argue that sanctions are warranted over Kurowski's allegation that "Defendants commenced a campaign to harass" her "[u]pon learning that [she] had written this letter." Doc. 5 at ¶ 24; *see* Doc. 70 at ¶ 14 ("[S]ince Mr. Glasgow never got the letter, it would have been impossible for Defendants to know that Plaintiff wrote a letter to Mr. Glasgow when she had not."). But "when [Kurowski's] counsel investigated [her claims about the letter], they had the actual letter drafted by the Plaintiff"—attached as Exhibit 4 to the amended complaint—"and knowledge of the harassment Plaintiff received after it was sent." Doc. 81 at 11; *see* Doc. 5-1 at 16-26. Alleging that Kurowski sent the letter and was harassed as a result plainly does not warrant sanctions.

Likewise, it was not sanctionable for Kurowski to allege that she lost her employment because of Defendants' actions. Kurowski alleged: "Contemporaneously with the publication of [a September 2020] article, and continuing for two months thereafter, Defendant Kraft made several telephone calls and sent several emails to Plaintiff's then employer, Jarden & Howard Technologies, Inc., (JHT), making disparaging and untrue statements about Plaintiff, as a result of which Plaintiff was discharged from her employment with JHT in December 2020." Doc. 5 at ¶ 16; *see also id*. at ¶ 34 ("As a result of these actions by Defendants, Plaintiff has been discharged from her employment, and has otherwise suffered mental anguish and personal upset."); *id*. at ¶ 39 ("As a result of the actions of defendants which constitute violations of these provisions of Illinois law, Plaintiff has been discharged from her employment and has otherwise suffered mental anguish and personal upset."). Defendants' motion cursorily states that "[t]his false contention could have been eliminated had Plaintiff's counsel made inquiry of Plaintiff or

8

her employer." Doc. 70 at ¶ 15. In their brief, Defendants add that Kurowski was fired for reasons "which had nothing to do with any of the defendants' publications" and that she had been informed contemporaneously of the reasons for her termination. Doc. 72 at 3-5. True enough, JHT's president testified at a deposition that Kraft's inquiries and Defendants' publications were not the "driving force" behind Kurowski's termination. *Id*. at 24, 36-43. But plaintiffs regularly allege that they were terminated for reasons other than those stated by their employers. Especially given Kraft's contact with JHT in the months leading up to Kurowski's firing, her allegation that she was fired due to Defendants' conduct is not sanctionable.

Nor will the court impose sanctions over an exhibit to the amended complaint bearing the signature "Bonnie Kurowski, PhD." Doc. 5-1 at 15. The exhibit is dated March 1, 2021, *id*. at 13—several months before Kurowski filed this suit in August 2021. As Kurowski points out, Doc. 81 at 10, the amended complaint itself does not allege that Kurowski held a PhD. Because Kurowski's apparently false representation that she holds a PhD was not aimed at the court when she made it, it does not merit sanctions.

Defendants also request sanctions for Kurowski's allegation that Exhibit 1 to the amended complaint mentioned the amount owed on her student loans and her past bankruptcy filings. Doc. 5 at ¶ 15; Doc. 5-1 at 1-6. The allegation is incorrect and almost certainly the result of less than careful lawyering. But under the facts and circumstances of this case, the allegation is a relatively minor—and easily detected—misstep and does not warrant sanctions.

Nor are Defendants entitled to sanctions for Kurowski's and/or her counsel's failure to amend the amended complaint as facts came to light that cast doubt on some of its allegations. Doc. 70 at ¶¶ 8, 22. Granted, an Advisory Committee Note from 1993 states that "a litigant's obligations with respect to the contents of [covered papers] are not measured solely as of the

9

time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. But the Seventh Circuit later explained that "Rule 11 does not impose a continuing obligation to revise pleadings." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996).

This leaves Defendants' arguments that sanctions are warranted due to:

- Kurowski's false allegation that "the Defendants falsely stated in the article [attached to the amended complaint as Exhibit 1] that Plaintiff had filed bankruptcy twice," Doc. 5 at ¶ 15; *see* Doc. 70 at ¶¶ 5-9.

- Kurowski's false allegation that the article attached to the amended complaint as Exhibit 2 "falsely accused Plaintiff of having 'sent a threatening email to Township Trustees and the Township Supervisor making all kinds of wild incoherent accusations, threatening criminal and civil actions and even threatening to file a complaint with the DuPage County State'[s] attorney and the National Security Division of the Department of Justice.'" Doc. 5 at ¶ 17; *see* Doc. 70 at ¶ 12; Doc. 5-1 at 7-12.

Defendants argue that the first allegation warrants sanctions because Kurowski had filed for bankruptcy three times, which is something that she presumably knew and that her counsel could easily have ascertained. Doc. 70 at ¶¶ 5-9; Doc. 72 at 7-10. And Defendants say the second allegation is sanctionable because the article fairly described Kurowski's email and "[a] simple internet inquiry would have revealed [her] actual e-mail." Doc. 70 at ¶ 12; *see* Doc. 72 at 3.

Standing alone, those two grounds for sanctions present close questions. However, given Defendants' litigation conduct, the court exercises its discretion to decline to award sanctions—based on those two grounds and, in the event they also present close calls, Kurowski's failure to amend her amended complaint as the litigation progressed and her incorrect allegation that Exhibit 1 mentioned the amount owed on her student loans and her past bankruptcy filings. "[A] district court ha[s] considerable discretion in deciding whether to issue Rule 11 sanctions." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020); *see* Fed. R. Civ.

P. 11(c)(1) ("If … the court determines that Rule 11(b) has been violated, the court *may* impose an appropriate sanction") (emphasis added).  As the Seventh Circuit has explained, "there is certainly an equitable element to sanctions issues." *Hunt v. DaVita, Inc.*, 680 F.3d 775, 781 (7th Cir. 2012).

Whatever Kurowski's and her counsels' shortcomings, Defendants' litigation conduct weighs against granting their Rule 11 motion.  First, as noted, some of Defendants' proffered grounds for Rule 11 sanctions are plainly meritless.  *See Automatic Liquid Packaging, Inc. v. Dominik*, 909 F.2d 1001, 1006 (7th Cir. 1990) (favorably quoting the district court's observation that "a counterclaim for Rule 11 sanctions not reasonably based in law … generated unnecessary litigation").  Second, as also noted, Defendants' initial sanctions brief improperly attempted to add grounds for sanctions that were not included in the motion attached to their safe harbor letter.  *E.g.*, Doc. 72 at 3 (invoking Kurowski's claim that Defendants drove to her home and surveilled her and calling ¶ 27 of the amended complaint "false and knowingly pled falsely"); *id*. at 8 (invoking Kurowski's inclusion of certain individuals as defendants); *see also* Doc. 86 at 3 (Defendants' reply, apparently attempting to add other individuals to the list of defendants whose inclusion warrants sanctions).  Third, in seeking attorney fees and costs under the CPA, Defendants did not even acknowledge, let alone apply, the correct standard.  Finally, despite repeated warnings from the court throughout this litigation, Doc. 36 at 2 ("The tone of the filings in this case leaves much to be desired.  As much as the parties themselves are at each other's throats, the court expects that the attorneys will comport themselves professionally, in both their court filings and their interactions with each other."); Doc. 38 ("again direct[ing]" "Defense counsel's attention" to that admonition); Doc. 58 at 2 ("once again direct[ing]" "[c]ounsel's attention" to the court's earlier admonition about tone), Defendants' tone in the sanctions

11

briefing continued to be inappropriate. *E.g.*, Doc. 86 at 3 ("The United States District Court is not the place for playing oopsie daisy."); *id*. at 9 ("Frankly, the complaint was such a jumbled mess it fails to even have the appearance of having been drafted by an attorney with 56 years of experience."); *id*. at 10 ("Plaintiff claims that Defendants have not alleged a basis for sanctions under either Rule 11 or section 1927. This contention is absurd!"). For these reasons, the court declines to grant Rule 11 sanctions to Defendants.

  C.  **Section 1927 Sanctions**

Analysis under Section 1927 is not identical to the Rule 11 analysis. *See Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) ("[A] court has discretion to impose § 1927 sanctions when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice[]; pursued a claim that is without a plausible legal or factual basis and lacking in justification[]; or pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound. We have also interpreted § 1927 to impose a continuing duty upon attorneys to dismiss claims that are no longer viable.") (internal quotation marks and citations omitted); *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 839 (N.D. Ill. 2015) (collecting cases noting that Section 1927 has no safe harbor requirement). That said, "Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions [even if] it has found unreasonable and vexatious conduct." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004). Thus, even if the conduct of Kurowski's counsel otherwise supported sanctions under Section 1927, the court would decline to award sanctions given the considerations set forth immediately above. *See Kessler v. Superior Care, Inc.*, 127 F.R.D. 513, 524 (N.D. Ill. 1989) ("Superior also contends that Kessler needlessly multiplied the litigation by failing to concede setoffs earlier in the lawsuit. That argument has substantial force … . But Superior's problem is

that it was guilty of similar conduct … . In such a case, it is only equitable to deny to both parties (although to this point only Superior has actually claimed) any recovery under Section 1927 for needless multiplication of the proceedings.").

November 21, 2022

_____
United States District Judge